UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
JOHN S. HUNTER,                     )
                                    )
            Plaintiff,              )
                                    )
        v.                          )   Civ. Action No. 12-1144 (EGS)
                                    )
MASSACHUSETTS MUTUAL LIFE           )   **UNDER SEAL**
INSURANCE COMPANY,                  )
                                    )
            Defendant.              )
_____ )

**MEMORANDUM OPINION**

John Hunter brings this lawsuit alleging that Massachusetts Mutual Life Insurance Company ("MassMutual") breached an insurance contract by failing to pay him the correct amount of monthly disability benefits and commencing payment on the wrong date. Pending before the Court is defendant's motion for summary judgment. Upon consideration of the motion, the responses and replies thereto, the applicable law, the oral argument, and the entire record, the Court **GRANTS** defendant's motion.

**I.   BACKGROUND**

  **A.   The Disability-Insurance Policy**

Dr. Hunter, a dentist, has practiced in Washington, D.C. since 1985. Def.'s Statement of Material Facts ("Def.'s SMF"), ECF No. 22-1 ¶¶ 1–2. On October 5, 1992, he obtained a disability-insurance policy ("the Policy") from MassMutual. *Id.* ¶ 3. The Policy provides a maximum monthly benefit of $3,000 and an

additional $1,000 monthly maximum if Dr. Hunter does not receive other disability benefits. *See* Ex. 1 to Def.'s Mot. for Summ. J. ("Mot."), ECF No. 24 at 3, 23.[1] The amount of benefits to be paid each month is tied to Dr. Hunter's "loss of earned income," which is the difference between his average monthly income during the twelve months preceding the onset of his disability and his income during the current month. *See id.* at 7–8.

Benefits may be paid only after a waiting period, which lasts for sixty days after the onset of the disability. *Id.* at 3–4, 9. Benefits are then available "subject to certain notice and proof of disability requirements." *Id.* at 13. The insured must provide "notice" by indicating in writing that he "is disabled and that a claim may be made," and must do so "before the end of 20 days after the Waiting Period, or as soon afterwards as it is reasonably possible to do so." *Id.* He must also submit "proof of claim . . . before the end of 90 days after the end of each monthly period" for which he claims benefits. *Id.* "[I]f it is not reasonably possible to give . . . proof within this time limit, then proof may be given as soon thereafter as it is reasonably possible to do so." *Id.* This extension is limited to one year, "[u]nless the delay is due to legal incapacity." *Id.*

---

[1] The parties dispute whether Dr. Hunter is entitled to an additional $863 per month pursuant to a policy rider, but that dispute is immaterial to this motion. *Compare* Def.'s SMF ¶ 4, *with* Plaintiff's Statement of Material Facts, ECF No. 27-1 ¶ 4.

### B. Dr. Hunter's Injury and Insurance Claim

On July 17, 2004, Dr. Hunter was involved in a motorcycle accident. *See* Pl.'s Opp. to Mot. for Summ. J. ("Opp."), ECF No. 27 at 2. He did not contact MassMutual about the accident until March 4, 2011, when he provided notice of a claim. *See* Ex. 2 to Mot., ECF No. 22-5 at 1–2. That day, MassMutual sent him a claim package and asked him to complete certain forms. Ex. 3 to Mot., ECF No. 22-6 at 1. On April 12, 2011, Dr. Hunter submitted his forms and listed various medical conditions as resulting from the accident. *See* Ex. 4 to Mot., ECF No. 24-1 at 5.

MassMutual wrote Dr. Hunter on April 21, 2011 to request that he "explain, in detail, why he filed a claim more than 6 years after the date on which he is claiming Partial Disability." Ex. 5 to Mot., ECF No. 22-8 at 2. Dr. Hunter replied on June 3, 2011, and attached a letter from a doctor stating that the conditions resulting from the accident "caused [Dr. Hunter] to not pursue or understand the option of pursuing disability coverage since 2004." Ex. 2 to Opp., ECF No. 28-1 at 3.

On October 20, 2011, MassMutual approved Dr. Hunter's claim for disability benefits and assigned him a "temporary disability date of January 3, 2011." Ex. 6 to Mot., ECF No. 22-9 at 1. On February 14, 2012, MassMutual wrote to Dr. Hunter to inform him of its conclusion that his "permanent date of disability" for the purpose of calculating his entitlement to benefits would be

January 3, 2011. *See* Ex. 7 to Mot., ECF No. 22-10. Among other reasons for this decision, MassMutual stated:

> [W]e did not receive notice of claim from Dr. Hunter until March 4, 2011 and we did not receive the initial Proof of Loss until April 6, 2011. It is important to note that this is more than 6 ½ years after Dr. Hunter's reported date of disability. *As a result of the late notice of claim and proof of loss submission, MassMutual's rights have been severely prejudiced . . . .* As such, we are unable to make an accurate assessment of any benefits to which Dr. Hunter may be eligible for prior to January 3, 2011.

*Id.* at 3 (emphasis added).

### C. Procedural History

Dr. Hunter filed this lawsuit on July 9, 2012, alleging that MassMutual breached the insurance contract by failing to pay disability benefits to cover the period from July 17, 2004 to January 2, 2011, and by calculating his prospective benefits based on his average monthly income from the twelve months preceding January 3, 2011, rather than July 17, 2004. *See* Compl., ECF No. 3 ¶¶ 23–29. He was initially granted leave to proceed under the pseudonym John Doe. *See* Order, ECF No. 2.

On September 10, 2012, MassMutual filed two motions to dismiss. The first claimed that Dr. Hunter violated Federal Rule of Civil Procedure 10(a) by filing his complaint under a pseudonym. *See* Mem. in Supp. of Mot. to Dismiss, ECF No. 4-1. The second motion sought dismissal of various claims and forms of relief. *See* Mem. in Supp. of Mot. to Dismiss, ECF No. 5-1.

After a hearing, the Court ordered Dr. Hunter to proceed under his real name, and dismissed certain of his claims and requests for relief. *See* Minute Order of May 2, 2013.

On September 9, 2013, MassMutual moved for summary judgment. *See* Mem. in Supp. of Mot. ("Mem."), ECF No. 22-2. Dr. Hunter filed his opposition on November 18, 2013. *See* Opp. MassMutual filed its reply on December 6, 2013. *See* Def.'s Reply ("Reply"), ECF No. 29. The Court held a hearing on May 21, 2014, and subsequently ordered the parties to file supplemental briefs. *See* Pl.'s Suppl. Br., ECF No. 33; Def.'s Suppl. Br., ECF No. 35. The motion for summary judgment is now ripe for decision.

**II. STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that is capable of affecting the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A court considering a motion for summary judgment must draw all "justifiable inferences" from the evidence in favor of the nonmovant. *Id.* at 255. To survive a motion for

5

summary judgment, however, the requester "must do more than simply show that there is some metaphysical doubt as to the material facts"; instead, the nonmoving party must come forward with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)).

## III. CHOICE OF LAW

Federal courts sitting in diversity must apply the choice-of-law rules of the state in which they sit. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). Therefore, the District of Columbia's choice-of-law analysis applies. In insurance cases, where the insured is a D.C. resident and the insured risk is located in D.C., courts have held that D.C. law applies. *See, e.g.*, *Potomac Elec. Power Co. v. Cal. Union Ins. Co.*, 777 F. Supp. 968, 973 (D.D.C. 1991). Defendant argues that D.C. law applies to this case because Dr. Hunter was a D.C. resident when the Policy was issued and at the time he submitted his claim for benefits. *See* Mem. at 4 n.1. Dr. Hunter does not dispute this. Accordingly, the Court will apply D.C. law.

## IV. ANALYSIS

MassMutual claims that Dr. Hunter is not entitled to benefits prior to January 3, 2011 because he did not provide timely notice and proof of his claim. *See* Mem. at 4–7; Def.'s Suppl. Br. at 2. MassMutual also argues that Dr. Hunter did not submit

evidence from which a jury could conclude that it was not reasonably possible to submit timely notice and proof. *See* Reply at 1–5. In any event, MassMutual asserts, Dr. Hunter's failure to provide timely proof dooms his claim because the Policy limits the extension for delayed proof to one year, absent legal incapacity. *See id.* at 1–2. Dr. Hunter responds that MassMutual waived this argument and that the Court should ignore the one-year limit. *See* Pl.'s Suppl. Br. at 1–9.

**A.   MassMutual Did Not Waive the Proof Requirement.**

Dr. Hunter argues that MassMutual waived the notice and proof requirements, but provides no legal authority for this argument. *See* Pl.'s Suppl. Br. at 1–3. He asserts that "MassMutual did not deny the claim, nor any portion of the claim, on account of Dr. Hunter's failure to provide timely notice or proof." *Id.* at 1. He believes that MassMutual's February 14, 2012 denial of his claim for benefits prior to January 3, 2011 "was based on the sufficiency of medical evidence, not the timing of his notice or proof." *Id.* at 2. The Court disagrees.

The Policy makes the payment of benefits "subject to certain notice and proof of disability requirements." Ex. 1 to Mot., ECF No. 24 at 13. As a result, compliance with the notice and proof provisions are conditions precedent to coverage. *See, e.g.*, *Travelers Indem. Co. v. United Food & Comm. Workers Int'l Union*, 770 A.2d 978, 991 (D.C. 2001). When "compliance with notice

7

provisions is a contractual precondition to coverage, a failure timely to notify releases the insurer from liability." *Greycoat Hanover F Street Ltd. P'ship v. Liberty Mut. Ins. Co.*, 657 A.2d 764, 768 (D.C. 1995); *see also Sidibe v. Traveler's Ins. Co.*, 468 F. Supp. 2d 97, 101 (D.D.C. 2006). Accordingly, Dr. Hunter bears the burden of proving that these conditions precedent were satisfied as part of his breach-of-contract claim. *See Nat'l Elec. Mfrs. Ass'n v. Gulf Underwriters Ins. Co.*, 162 F.3d 821, 826 (4th Cir. 1998) (applying D.C. law to an insurance dispute and noting that "conditions precedent must be proved by [a] plaintiff who seeks to recover on [an] insurance policy").

Dr. Hunter's argument appears to be that he need not prove compliance with the notice and proof provisions because MassMutual waived those conditions by failing to rely on them in adjudicating his initial request for benefits. In fact, MassMutual focused on the delayed notice and proof during the investigation of Dr. Hunter's claim. *See* Ex. 5 to Mot., ECF No. 22-8 at 2 (April 21, 2011 letter requesting a detailed explanation why Dr. Hunter "filed a claim more than 6 years after the date on which he is claiming Partial Disability"). Moreover, in its final decision, MassMutual clearly stated that the delayed notice and proof "severely prejudiced" its rights, made it difficult to investigate the claim, and rendered MassMutual unable to assess whether Dr. Hunter would otherwise

8

have been entitled to benefits prior to January 3, 2011. *See* Ex. 7 to Mot., ECF No. 22-10 at 3.

MassMutual specifically relied on the delayed notice and proof. Waiver, by contrast, "'is an intentional relinquishment or abandonment of a known right or privilege.'" *Nortel Networks, Inc. v. Gold & Appel Transfer, S.A.*, 298 F. Supp. 2d 81, 88 (D.D.C. 2004) (quoting *United States v. Robinson*, 459 F.2d 1164, 1168 (D.C. Cir. 1972)). "To preserve a right to notice, a party may question the sufficiency of the notice it has received or otherwise indicate its belief that the party obligated to give notice has in some way been deficient." *Id.; see also FDIC v. Interdonato*, 998 F. Supp. 1, 10 (D.D.C. 1997). MassMutual's invocation of the delayed notice and proof in its letter setting forth its decision on Dr. Hunter's claim was sufficient to preserve its right to notice.

**B. Dr. Hunter Failed to Provide Timely Proof of His Claim.**

MassMutual contends that Dr. Hunter's claim must fail because he did not comply with the Policy's notice and proof provisions. As discussed above, these provisions are conditions precedent to coverage. *See supra* at 7. It is undisputed that Dr. Hunter did not comply with the Policy's enumerated time limits because he did not provide notice of his claim until March 4, 2011, well after the eighty days prescribed by the Policy, and did not provide proof of his claim until April 12, 2011.

The Policy provides an escape valve for delayed notice, however, by alternatively permitting notice "as soon as it is reasonably possible." Ex. 1 to Mot., ECF No. 24 at 13. Dr. Hunter rightly notes that D.C. courts interpret such terms to permit "notice within a reasonable time in view of all the facts and circumstances of each particular case"—a determination that "will often be a question for the jury." *Greycoat*, 657 A.2d at 768 (quotation marks omitted).

The Court need not resolve whether Dr. Hunter provided evidence from which a jury could infer that his notice was submitted as soon as reasonably possible, however, because the Policy provides no such extension of the deadline for submitting proof:

> Written proof of claim must be given . . . before the end of 90 days after the end of each monthly period for which we are liable for benefits. However, if it is not reasonably possible to give us proof within this time limit, then proof may be given as soon thereafter as it is reasonably possible to do so. Unless the delay is due to legal incapacity, this extension of time is limited to one year.

Ex. 1 to Mot., ECF No. 24 at 13. The plain language of this provision bars Dr. Hunter's claim to benefits prior to January 2011 because he did not submit proof until April 2011. Moreover, because Dr. Hunter submitted proof over one-year late, he may take advantage of the extension for circumstances in which it is not reasonable possible to provide proof only if the delay was

"due to legal incapacity." *Id.* Dr. Hunter has not argued that he was legally incapacitated, and, as his counsel appeared to admit during oral argument, his evidence does not support such a finding.[2]

Under D.C. law, this plain language must be given effect. "An insurance policy is a contract between the insured and the insurer, and in construing it [a court] must first look to the language of the contract." *Cameron v. USAA Prop. & Cas. Ins. Co.*, 733 A.2d 965, 968 (D.C. 1999). If that language is unambiguous, "the policy must be enforced as written, absent a statute or public policy to the contrary." *Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 445 F. Supp. 2d 37, 41 (D.D.C. 2006) (citing *Cameron*, 774 A.2d at 968–69).

Dr. Hunter first argues that "the construction of the Policy" should overrule its plain language. His argument appears to be that because the Policy provides for an extension of the deadline for filing notice of a claim so long as it is submitted "as soon as it is reasonably possible," it would be incongruous to prevent recovery because of failure to submit proof during a time when it was not reasonably possible to submit such proof.

---

[2] The Court asked during oral argument whether, in the absence of legal incapacity, the Policy could provide Dr. Hunter with an additional year of benefits (from January 2010 to January 2011) due to language permitting a one-year delay in submitting proof as soon as it is reasonably possible. *See id.* Plaintiff's counsel disavowed this interpretation of the Policy.

11

Plaintiff relies on the case of *Barnett v. Mutual Trust Life Insurance Co.*, 105 N.Y.S. 2d 769 (N.Y. Sup. Ct. 1951), but that case is easily distinguishable. In *Barnett*, the Court interpreted an insurance contract that required submission of proof before an insured could obtain benefits and required notice "during the lifetime of the insured and during the continuance of total disability." *Id.* at 770. The notice provision permitted delayed notice "if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible. *Id.* The Court held that interpreting the proof provision to bar recovery where the notice provision would have granted an extension would render the notice provision "meaningless and illusory since the assured . . . [is] not excused from furnishing due proof of disability within the period during which they are excused from furnishing notice of claim." *Id.*

The *Barnett* Court distinguished a prior case in which a contract required notice "within 20 days after the date of the accident . . . unless it was not reasonably possible to give such notice" and required proof "within 90 days after the loss." *Id.* (citing *MacKay v. Metropolitan Life Ins. Co.*, 22 N.E.2d 154 (N.Y. 1939). Those proof and notice provisions were "consistent" because "[a]lthough the time for giving notice of claim could be extended . . . beyond 20 days after the date of the accident,

such extension was not intended to go beyond the 90-day period provided for the furnishing of proof of loss." *Id.*

The Policy here is also consistent. The notice provision provides for an unlimited extension of time, but the proof provision limits its extension to one year, absent legal incapacity. Accordingly, notice may be given as soon as reasonably possible and an insured may then recover prospective benefits by submitting proof. Having submitted late notice, however, an insured may not receive retroactive benefits absent legal incapacity, unless the proof is submitted less than one year late and as soon as reasonably possible.[3]

Alternatively, plaintiff asserts that the "common law" requires that proof provisions in insurance contracts be interpreted to permit untimely proof so long as the delay is "reasonable," and that this doctrine overrides the Policy's plain language. *See* Pl.'s Suppl. Br. at 7–9. There is minimal support for such a broad doctrine. The District of Columbia cases cited by plaintiff involved interpretations of contractual terms that required notice of a claim within a reasonable period and contained no other limit on the length of this period. *See*

---

[3] Because the Policy is consistent, the canon that ambiguities in insurance contracts are construed against the insurer is inapplicable. *See* Pl.'s Suppl. Br. at 7 (citing *Athridge v. Aetna Cas. & Sur. Co.*, 351 F.3d 1166, 1172 (D.C. Cir. 2003); *Carey Canada, Inc. v. Cal. Union Ins. Co.*, 748 F. Supp. 8, 12 (D.D.C. 1990)).

13

*Diamond Serv. Co. v. Utica Mut. Ins. Co.*, 476 A.2d 648, 652 (D.C. 1984) (interpreting a contractual term requiring notice of potential claim "as soon as practicable"); *Starks v. N.E. Ins. Co.*, 408 A.2d 980, 982 (D.C. 1979) (same). Those decisions do not support a finding that explicit contractual limitations may be ignored.

The other cases cited by plaintiff stand for the much narrower proposition that courts may override contractual notice or proof terms in situations involving "incapacity" or "insanity." *See Mut. Life Ins. Co. v. Heilbronner*, 116 F.2d 855, 858–59 (8th Cir. 1941) (overriding contractual time limits because of insured's "mental incapacity," which "rendered the insured non compos mentis"); *Saebra v. Puritan Life Ins. Co.*, 369 A.2d 652, 655, 656 (R.I. 1977) (inferring an exception for "mental incapacity" or "insanity"); *Franklin Life Ins. Co. v. Tharpe*, 178 So. 300 (Fla. 1938) (crafting exception for "physical or mental incapacity"). In another case, a court excused an insured's failure to comply with a provision that required proof "no later than 90 days . . . or as soon thereafter as reasonably possible" and was interpreted to bar extensions "later than one year after the deadline." *Chapman v. Choicecare Long Island Long Term Disability Income Plan*, No. 98-cv-4475, 2004 U.S. Dist. LEXIS 26546, at *2 (E.D.N.Y. May 28, 2004) (quotation marks and alteration omitted). That policy did not contain an exception

14

for incapacity, so the Court relied on principles of equitable tolling to permit the case to go forward due to evidence that the plaintiff's mental illness rendered her "very dysfunctional." *Id.* at *8. The concerns expressed in these cases are largely—if not entirely—assuaged by the Policy itself, which extends the deadline for filing proof in cases of legal incapacity.[4]

One case cited by plaintiff, *Clarke v. Unum Life Insurance Co.*, 14 F. Supp. 2d 1351 (S.D. Ga. 1998), arguably supports his theory. The Court in that case faced a familiar set of notice and proof provisions: notice was required "within 30 days" or

---

[4] *Chapman* also relied on the doctrine of equitable tolling, which is inapplicable here. Equitable tolling is "exercised only in extraordinary and carefully circumscribed instances." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 580 (D.C. Cir. 1998). In D.C., it may apply to a person who is *non compos mentis*. *Miller v. Rosenker*, 578 F. Supp. 2d 67, 72 (D.D.C. 2008). This generally means that the person "is completely incapable of handling his affairs and legal rights," *id.*, and the inquiry "often focuse[s] on whether the plaintiff was ever adjudged incompetent, signed a power of attorney, had a guardian or caretaker appointed, or otherwise took measures to let someone else handle [plaintiff's] affairs." *Davis v. Vilsack*, 880 F. Supp. 2d 156, 162 (D.D.C. 2012) (quotation marks omitted). Dr. Hunter has not demonstrated legal incapacity. *See supra* at 7. Nor has he submitted evidence that he was utterly incapable of handling his affairs. Indeed, Dr. Hunter has not disputed that he filed a lawsuit in 2009 seeking to recover funds allegedly embezzled by his former office manager. *See* Reply at 4-5; Ex. 1 to Def.'s Suppl. Br., ECF No. 35-1. This fact renders him ineligible for equitable tolling because "[p]articipation in legal . . . proceedings in an effort to secure rights or benefits is an indication of mental capacity." *Schmidt v. United States*, 89 Fed. Cl. 111, 123 (Fed. Cl. 2009); *see also Messerschmidt v. United States*, No. 3-2421, 2005 WL 578174, at *5 (D.D.C. Mar. 10, 2005).

"as soon as it is reasonably possible" and proof was required "no later than 90 days" or "as soon as reasonably possible"—"[b]ut . . . not . . . later than one year after the time proof is otherwise required." *Id.* at 1353. Although notice and proof were submitted over one year late, the Court permitted the case to go forward because "there is sufficient evidence to raise a question of fact as to whether [plaintiff's] failure to provide timely notice was excused." *Id.* at 1356. In *Clarke*, however, the Court did not address the impact of the independent proof-of-claim provision, which limited such an extension to one year, and the Court was applying Georgia law. The impact of such a provision is squarely before this Court, and D.C. law applies to this case.

In D.C., unambiguous language in an insurance contract "must be enforced as written, absent a statute or public policy to the contrary." *Nat'l R.R. Passenger Corp.*, 445 F. Supp. 2d at 41. Dr. Hunter has identified no relevant statute and the Court is not persuaded that a sufficiently strong public policy exists to override the Policy's one-year limitation on delayed proof. Some of the cases cited by Dr. Hunter found the need to infer an exception for incapacity, but the Policy already contains such a term. Dr. Hunter asks the Court to infer an exception for all situations in which providing proof is not reasonably possible, regardless of the reason or length of delay. That broad request

16

to undermine the Policy's plain language cannot be squared with the long history of D.C. Court of Appeals decisions emphasizing the importance of notice-type provisions in insurance contracts, declaring them "of the essence of the contract," *Greycoat*, 657 A.2d at 768, and mandating that they be "given effect in the interest of the public as well as the insurer." *Diamond*, 476 A.2d at 652.[5] There is therefore little basis to ignore the plain language of the Policy's proof provision.

Nor is it rare for courts to enforce similar provisions. *See Hunter v. Fireman's Fund Ins. Co.*, 448 F.2d 805, 807 (10th Cir. 1971) (enforcing provision that made notice due "within twenty days . . . or as soon thereafter as it reasonably possible" and required proof "within 90 days," but provided an extension if "not reasonably possible to give proof" and limited that extension to one year, "except in the absence of legal capacity"); *Wright v. Paul Revere Life Ins. Co.*, 291 F. Supp. 2d 1104, 1115 (C.D. Cal. 2003) (enforcing provision which "require[d] that written proof of loss be provided within 90 days . . . unless not reasonably possible" and stated "unless You are legally incapacitated, written proof must be given within one year of the date it was required"); *see also, e.g., Roth v. Nw. Mut. Life Ins. Co.*, No. 12-452, 2014 WL 1281603, at

---

[5] D.C. is also among the minority of jurisdictions that do not require an insurer to prove that late notice caused prejudice. *See, e.g., Nat'l R.R. Passenger Corp.*, 445 F. Supp. 2d at 43.

*3-4 (D. Minn. Mar. 28, 2014); *Dawson v. Nw. Mut. Life Ins. Co.*, No. 10-2641, 2011 WL 4842543, at *1-3 (D. Minn. Oct. 12, 2011); *Broughton v. Unum Life Ins. Co.*, No. 6-4015, 2007 WL 39432, at *1, 6 (D.S.D. Jan. 5, 2007); *Nelson v. Ins. Co. of N. Am.*, 264 F. Supp. 501, 503 (D.N.J. 1967). The Court will therefore enforce the Policy as written. Dr. Hunter's failure to submit timely proof bars his claim to benefits prior to January 3, 2011 and renders him ineligible for a prospective adjustment of the amount of his benefits based on an earlier date of disability because the proof provision is a condition precedent to coverage. *See supra* at 7.

**V. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** defendant's motion for summary judgment. The Court issues this Opinion under seal because it references certain sealed exhibits that were submitted by the parties. The parties are **ORDERED** to notify the Court whether any portion of this Opinion should be redacted before being filed publicly by no later than July 14, 2014. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**July 1, 2014**